**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SABA CAPITAL MASTER FUND, LTD., and SABA CAPITAL MANAGEMENT, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> ASA GOLD AND PRECIOUS METALS, LTD., MARY JOAN HOENE, and WILLIAM DONOVAN, <br><br> Defendants. | Case No. 25-3265 <br><br><br> **COMPLAINT** |

Plaintiffs Saba Capital Management, L.P. ("Saba Capital") and Saba Capital Master Fund, Ltd. ("Saba Master Fund") (together, "Saba"), for their Complaint against Defendants ASA Gold and Precious Metals, Ltd. ("ASA"), Mary Joan Hoene, and William Donovan (each either currently a "Director"), state as follows:

**NATURE OF THE ACTION**

1.    In December 2023, ASA adopted an unlawful and discriminatory shareholder rights plan ("Poison Pill" or "Pill"), giving certain common shareholders limited-duration rights for a four-month period to acquire one additional ASA common share at $1.00 per share for each common share owned, but denying such rights to shareholders with beneficial ownership of more than 15% of ASA.

2.    ASA readopted the Pill in substantively unchanged form four times—in April 2024, August 2024, December 2024, and March 2025, each and every time again granting the same limited-duration purchasing rights to shareholders with ownership interests of less than 15% while denying

1

them to all others. Like clockwork, these readoptions have meant that the Pill has remained in continuous operation and effect for *474 days*.

3.     ASA's Poison Pill violates the Investment Company Act of 1940 (the "ICA"), pursuant to which "no registered closed-end company shall sell any common stock of which it is the issuer at a price below the current net asset value of such stock," except, as relevant, "upon the exercise of any warrant . . . issued in accordance with the provisions of section 80a-18(d) of this title." 15 U.S.C. § 80a-23(b)(4). Section 80a-18(d), in turn, requires that any such subscription rights must be "issued exclusively and *ratably* to a class or classes of such company's security holders." 15 U.S.C. § 80a-18(d) (emphasis added). It further prohibits the issuance of such rights "except in the form of warrants or rights to subscribe expiring *not later than one hundred and twenty days after* their issuance." *Id*. (emphasis added).

4.     The Pill provides subscription rights for ASA common stock that are not ratable (i.e. proportional) to the ownership interests of the class of common shareholders.

5.     Moreover, because the Pill was repeatedly extended, it operates as a warrant or subscription right expiring more than 120 days after issuance in violation of the ICA.

6.     In fact, *another court in this District just weeks ago held precisely as much*, declaring the December 2024 iteration of the Pill void and granting rescission to Saba. *See Saba Cap. Master Fund, LTD. v. ASA Gold and Precious Metals, LTD.*, 24-cv-690 (JGLC), 2025 WL 951049, at *8–10 (S.D.N.Y. Mar. 28, 2025) ("*ASA I*").

7.     After Judgment issued in the above-captioned action on the afternoon of Friday, March 28, 2025, and *before the markets had even opened* on Monday, March 31, Defendants had already readopted the Pill in substantively identical form—despite a court in this District specifically finding that the Pill violated Section 18(d) of the ICA.

8.     The effect of the Pill's readoption on March 31, 2025 was that Saba was denied the very victory it had just won. Accordingly, the very same day that the Pill was readopted yet again, Saba filed a motion to enforce the court's March 28 Judgment via rescission of the March 2025 Pill, a declaration of its (continued) voidness, and injunctive relief prohibiting its further violation in violation of the ICA. In the alternative, Saba sought amendment of the Judgment pursuant to Federal Rule of Civil Procedure 59(e), in order that the Judgment comported with the court's determination that ASA's repeated readoption of the Pill left the fund in a "rights plan state *ad infinitum*," despite the ICA's express 120-day limitation. *ASA I*, 2025 WL 951049 at *8.

9.     On April 15, 2025, the court agreed with the "logic" of Saba's argument that "successive rights plans—each adopted close in time and nearly identical in form, after the prior one expired—also violate the ICA." *Saba Cap. Master Fund, LTD. v. ASA Gold and Precious Metals, LTD.*, 24-cv-690 (JGLC), Dkt. 57 at 7 (S.D.N.Y. Apr. 15, 2025) (Slip Op.) ("*ASA II*"). It "decline[d]" to hold as much "under the guise of Rule 59," however, given its determination that "new facts [] arose after [the March 28] judgment." *Id*.

10.     While indicating that Saba likely could succeed on the merits of its challenge to the newest Pill, the Court concluded that, procedurally, Saba needed to challenge the March 2025 Pill by means other than Saba's motion to enforce the prior order or Saba's motion to amend under Rule 59(e).

11.     Accordingly, at that court's invitation, Saba brings this action—to enforce the clear and unambiguous reasoning in *ASA I*, to rescind the Pill readopted by Defendants in unchanged form on March 31, 2025, and to permanently enjoin Defendants from further readoption of the same in violation of Section 18(d) of the ICA.

13283033v2/018158

12.  The Pill has remained in continuous effect for ***every single day of trading*** from December 31, 2023 to the present (***474 days*** and running), such that Saba has been unable to purchase ***any*** additional shares since the first Pill took effect without triggering the Pill's operation.

13.  As the beneficial owner 17.18% of the common shares of ASA, Saba Capital and the funds it manages, including Saba Master Fund, have been continuously harmed by the Poison Pill.

14.  Saba seeks rescission of ASA's newly readopted Poison Pill in violation of federal law, a declaration that the Pill violates and is void under the ICA, and an injunction against further implementation and/or readoption of the Pill. Saba will face continued injury in the absence of such relief, given that ASA readopted the Poison Pill in substantially identical form despite the Pill's nominal expiration date, and ASA may attempt to do so again at any time—as it has already demonstrated on ***four*** separate occasions, including after the Pill was rescinded by another court in this District. *See ASA I*, 2025 WL 951049 at *8–10.

## **PARTIES**

15.  Plaintiff Saba Capital is a limited partnership organized under the laws of Delaware with its principal place of business located at 405 Lexington Avenue, New York, New York. It is the investment manager of Saba Master Fund and other investment funds, which are collectively the beneficial owners of 17.18% of the outstanding shares of ASA.

16.  Plaintiff Saba Master Fund is a Cayman Islands exempted company that currently beneficially holds common shares of ASA.

17.  Defendant ASA is a Bermuda limited liability company, with its executive offices at Three Canal Plaza, Suite 600, Portland, ME. ASA is listed on the New York Stock Exchange under ticker symbol "ASA," and conducts substantial business in New York.

18.  Defendant Mary Joan Hoene is a citizen of New York, a current Director of ASA,

13283033v2/018158

and has been a Director of ASA since 2014.

19.    William Donovan is a citizen of Pennsylvania, a current Director of ASA, and has

been a Director of ASA since 2020.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over the subject matter of this action pursuant to Section

44 of the ICA, 15 U.S.C. § 80a-43, 28 U.S.C. § 1331, and 28 U.S.C. § 1391(b).

21.    This Court has personal jurisdiction over ASA because ASA has sufficient

minimum contacts within the District as to render the exercise of jurisdiction over ASA by this

Court permissible under traditional notions of due process. ASA is also subject to personal

jurisdiction pursuant to: ASA Bylaw 156, pursuant to which ASA consented to shareholder suits

"in any court of the United States"; 15 U.S.C. § 80a-43, including because ASA transacts business

in this District; and the law of the State of New York, including N.Y. C.P.L.R. § 302, including by

conducting continuous and systematic business in this District, by causing harm to Saba in this

District, and because this action arises out of events and transactions in this District.

22.    Venue is proper in this judicial district pursuant to 15 U.S.C. § 80a-43 and 28 U.S.C.

§§ 1391(b)-(c) because ASA transacts business in this District, a substantial part of the events

giving rise to the claim occurred in this District, Saba has been harmed in this District, and ASA is

subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

23.    ASA is a closed-end precious metals and mining fund registered under the ICA.

24.    Each of the Defendant Directors was a member of the Board at the time ASA adopted

the Poison Pill, and participated in and authorized the adoption of the Pill, first in December 2023

and then again in April 2024. Thereafter, the Defendant Directors readopted the Pill in August 2024, December 2024, and March 2025 as members of a so-called "Rights Plan Committee."

25.    The Poison Pill gives common shareholders the right to acquire one additional ASA common share at $1.00 per share for each common share owned, but denies that right to shareholders who acquire beneficial ownership of more than 15% of ASA after the adoption of the Pill.

26.    ASA's Poison Pill is discriminatory and specifically targeted at Saba. In its January 2, 2024 press release announcing the Pill, ASA trumpeted that the Board adopted the Pill "in response to the rapid and significant accumulation of ASA shares by Saba Capital Management, LP." ASA's April 29, 2024 press release announcing renewal of the Pill contained this same language expressly acknowledging that the Pill targets Saba, as have those following the readoption of the Pill in August 2024, December 2024, and March 2025.

27.    Saba's beneficial ownership interest in ASA was 16.9% at the time ASA first adopted the Poison Pill. Saba's ownership interest is 17.18% as of the filing of this Complaint, not because Saba has acquired any additional shares since the Pill first took effect, but due to a decrease in the overall number of common shares issued by ASA.

28.    Even a minimal additional purchase of ASA's outstanding common shares (0.25% or more) by Saba will trigger the Pill, and all common shareholders *other than* Saba will be entitled to acquire additional shares at the discounted price.

29.    ASA's Poison Pill is unlawful under the ICA.

30.    *First,* as an ICA-regulated fund, any offering of rights to subscribe to or purchase ASA common stock can only be conducted pursuant to Section 18(d) of the ICA, and the Poison Pill fails to meet the requirements of Section 18(d) because the subscription rights provided by the Pill are not "ratable" to the class of common shareholders. The Pill denies certain holders, including Saba,

13283033v2/018158

of the right to acquire additional shares in ASA in proportion to their holdings of ASA common stock—a right that is available to *all other* common shareholders under the Pill.

31.    ***Second,*** the subscription rights provided by the Pill also have not expired within the 120-day period proscribed by section 18(d) of the ICA. Another court in this District found precisely as much in *ASA I. See* 2025 WL 951049 at *8–10. As of this filing, the Pill has remained in ***continuous operation for 474 days***, far longer than the express 120-day limit in Section 18(d).

32.    The Poison Pills conflicts with the ICA's plain text as well as its stated policies and purposes, including to prevent discrimination among or against shareholders, to prevent entrenched management by insiders, and to prevent inequitable distribution of the control of investment companies.

33.    ASA's Poison Pill—as reflected in, among other documents, the December 31, 2023 Rights Agreement, the April 26, 2024 Rights Agreement, the August 22, 2024 Rights Agreement, the December 19, 2024 Rights Agreement, and the March 31, 2025 Rights Agreement, each of which were filed with the U.S. Securities Exchange Commission as exhibits to ASA's Form-8Ks—is a binding contract between and among ASA, its Directors on the Rights Plan Committee, and ASA's common shareholders, including Saba. The Rights Agreement acknowledges that the Agreement was made "for the sole an exclusive benefit of the Company, the Rights Agent, and the registered holders of the Right Certificates (and, prior to the Distribution Date, ***the Common Shares***)." Rights Agreement § 30 (emphasis added).

34.    As the beneficial owner of 17.18% of the outstanding common shares of ASA and a party to the illegal contract made by ASA, Saba Capital and the funds it manages, including Saba Master Fund, have been and continue to be harmed by the Poison Pill.

35.    While the Pill includes a "grandfathering" provision, such that it is not triggered by ownership stakes, like Saba's, which were already above 15% at the time the Pill was adopted, a

minimal additional purchase of shares by Saba representing 0.25% of ASA common stock will trigger the Pill.

36.    Funds managed by Saba, including Saba Master Fund, have not acquired, and will not acquire, as many additional shares in ASA as they would were the Poison Pill not in effect, and the Pill has prevented Saba from acquiring shares with the ratable subscription rights to which Saba, as a member of the class of common shareholders, is entitled under the ICA.

37.    The Poison Pill is harmful to the value of Saba's investment in ASA, and to Saba's trading activity and business practices.

38.    ASA has persistently traded at a substantial discount to its net asset value (in other words, the market value of ASA is less than the combined value of the assets it holds). Specifically, from November 30, 2018 to November 30, 2023, ASA's average discount to NAV was -14.79%. By interfering with shareholders' ability to hold underperforming fund managers to account, the Poison Pill decreases the value of Saba's shares in ASA.

39.    Further, by entrenching ASA's management by the Defendant Directors on the Rights Plan Committee, the Pill creates an agency cost wherein expense ratios, director compensation levels, and managerial advisor fees are higher than they would be absent the Pill, decreasing the value of Saba's shares in ASA.

40.    One of Saba's business practices is to exercise the voting rights rightfully associated with Saba's economic stake, in order to make its voice heard in matters pertaining to the management of shareholder capital, as well as informing the directors that shareholders have a means of holding them accountable in votes for the election of directors, approval of advisory agreements, and other governance matters. The Pill prevents Saba from trading in ASA's shares with knowledge that it will be able to acquire sufficient shares to accomplish those goals.

13283033v2/018158

41.    Saba cannot determine whether it will be a worthwhile investment to accumulate or maintain additional shares without clarity as to what its rights will be if it triggers the Pill. Saba's trading activity is currently being impeded and harmed by the Pill.

42.    Given current market conditions, Saba would acquire more than its current 17.18% beneficial ownership stake in ASA given the imminent risk that the Pill will deny Saba the ratable subscription rights to which it is entitled under the ICA.

## FIRST CLAIM FOR RELIEF
### (Rescission Under the Investment Company Act)

43.    Saba repeats and realleges each of the allegations contained in paragraphs 1 through 42 above as if set forth in full herein.

44.    The ICA provides a private right of action for a party to a contract that violates the ICA to seek rescission of that violative contract. *Oxford Univ. Bank v. Lansuppe Feeder, LLC*, 933 F.3d 99, 109 (2d Cir. 2019) ("ICA § 47(b)(2) [15 U.S.C. § 80a-46(b)(2)] creates an implied private right of action for a party to a contract that violates the ICA to seek rescission of that violative contract.").

45.    ASA's Poison Pill, as reflected in, among other documents, the December 31, 2023 Rights Agreement and the April 26, 2024 Rights Agreement, the August 22, 2024 Rights Agreement, the December 19, 2024 Rights Agreement, and the March 31, 2025 Rights Agreement, which were filed with the U.S. Securities Exchange Commission as exhibits to ASA's Form-8Ks, is a binding contract between and among ASA, its Directors, and ASA's common shareholders, including Saba.

46.    The Poison Pill violates the ICA, rendering so much of the Pill, or other binding resolutions of ASA as include the Pill, illegal and void under the ICA. For example, under the ICA, "no registered closed-end company shall sell any common stock of which it is the issuer at a price

9

below the current net asset value of such stock," except, as relevant, "upon the exercise of any warrant . . . issued in accordance with the provisions of section 80a–18(d) of this title." 15 U.S.C. § 80a-23(b)(4). Section 80a-18(d), in turn, requires that any such subscription rights must be "issued exclusively and *ratably* to a class or classes of such company's security holders." 15 U.S.C. § 80a-18(d) (emphasis added). It further prohibits the issuance of such rights "except in the form of warrants or rights to subscribe expiring *not later than one hundred and twenty days after* their issuance." *Id*. (emphasis added).

47.    Saba has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

48.    Saba repeats and realleges each of the allegations contained in paragraphs 1 through 47 above as if set forth in full herein.

49.    The Poison Pill unlawfully commits ASA to sell common shares of ASA to certain shareholders at below the net asset value of those shares, and denies funds managed by Saba Capital, including Saba Master Fund, from acquiring stock in ASA with the ratable subscription rights to which Saba, as a member of the class of common shareholders, is entitled under the ICA. The Pill unlawfully issues subscription rights expiring later than the 120-day period proscribed by the ICA.

50.    By adopting the Pill, ASA has created a substantial and immediate controversy between the parties, of sufficient immediacy and reality to warrant declaratory relief, as to whether doing so violates the ICA.

51.    Accordingly, Saba seeks a declaratory judgment under 28 U.S.C. § 2201 et seq. to determine its rights and obligations, including whether the Poison Pill is illegal under 15 U.S.C. § 80a-23(b), 15 U.S.C. § 80a-18(d), and void pursuant to 15 U.S.C. § 80a-46.

13283033v2/018158

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

a.     Declaring that the Poison Pill violates the ICA, 15 U.S.C. § 80a-23(b) and 15 U.S.C. § 80a-18(d);

b.     Declaring the Poison Pill void, pursuant to 15 U.S.C. § 80a-46;

c.     Permanently enjoining Defendants, their agents and representatives, and all other persons acting in concert with them, from implementing or readopting the Poison Pill;

d.     Rescinding the Poison Pill, pursuant to 15 U.S.C. § 80a-46;

e.     Awarding Saba costs and disbursements, including a reasonable allowance for Saba's attorneys' fees and experts' fees and pre- and post-judgment interest; and

f.     Such other and further relief as the Court may deem necessary and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: April 18, 2025

*/s/ Mark Musico*
Jacob W. Buchdahl
Mark Musico
Zach Fields
SUSMAN GODFREY LLP
One Manhattan West, 50th Floor
New York, NY 10001
Tel: 212-336-8330
jbuchdahl@susmangodfrey.com
mmusico@susmangodfrey.com
zfields@susmangodfrey.com

*Attorneys for Plaintiffs*

11

13283033v2/018158